## No. 34,250

CHARLES E. GOULD, *Appellee*, v. THE HUTCHINSON OIL AND GAS COMPANY, *Appellant*.

(95 P. 2d 301)

Opinion filed November 10, 1939.

*Walter F. Jones, Claude E. Chalfant, Charles S. Fulton* and *J. Richards Hunter,* all of Hutchinson, for the appellant.

*L. P. Brooks,* of Wichita, *Roy C. Davis, Warren H. White, Frank S. Hodge, William H. Vernon* and *Eugene A. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover money. Judgment was for plaintiff. Defendant appeals.

The action was brought to recover a commission for the assistance rendered the defendant by Gould and a man named Goering in the purchase of an oil and gas lease.

The petition, after alleging the corporate character of the defendant, alleged that about July 18, 1935, the defendant, through its officer and agent, A. B. Davis, employed plaintiff and E. P. Goering for the purpose of enabling defendant to purchase an interest in the Wendel lease in Rice county, Kansas, and for the purpose of getting the defendant in touch with the owners of this lease to ascertain whether the lease could be purchased on terms satisfactory to it. The petition alleged that as a result of this agreement the plaintiff and Goering arranged with the owners of the lease for an appointment with defendant and, as a result, defendant purchased an undivided one-fourth of the Wendel lease for $25,000; that no specific sum for the services of plaintiff and Goering was agreed upon, and $2,500 was a reasonable and customary sum for such services, which defendant refused to pay; that Goering assigned his interest in the claim to plaintiff.

The prayer was for a judgment for $2,500 with interest.

For answer, the defendant denied that it ever employed the plaintiff or Goering or either of them; denied that either plaintiff or Goering assisted it in the purchase of the lease; and denied that it was agreed to pay either of them any commission. The answer admitted that it did purchase an undivided one-fourth interest in the lease, but denied that plaintiff or Goering had anything to do with the negotiations for the purchase. No reply was filed by the defendant.

The cause was submitted to a jury. At the close of the evidence of the plaintiff the defendant demurred to it. This demurrer was overruled. Defendant then introduced its evidence, and after instructions by the trial court the jury returned a verdict for plaintiff in the sum of $2,500. Defendant then filed its motion to set the verdict aside on the ground that the evidence was insufficient to prove any cause of action against the defendant, and for a new trial. When these motions came on to be heard the trial court found that the verdict was excessive, and entered an order requiring the plaintiff to file within a given time consent to remit one-half of the judgment, or $1,250 plus interest, and if plaintiff failed to do this then granting a new trial. Thereafter the plaintiff filed a motion asking the court to reconsider the above order and in the alternative consented to remitting one-half of the verdict provided that the judgment be paid promptly and that the defendant dismiss its appeal, which had been filed at that time. Thereafter the trial court amended its order and ordered the defendant to pay one-half of the verdict within ten days and dismiss its appeal; and that upon failure of the defendant to do so the entire judgment would be reinstated. The defendant failed to pay one-half of the jury's verdict within ten days and filed its notice of appeal. This is the appeal we are now considering.

. The first point argued by defendant is that the court erred in overruling its demurrer to the evidence of plaintiff. The ground of this argument, as stated in the brief of defendant, is as follows:

"1. Plaintiff failed by any evidence to prove that Davis made a contract with either Goering or Gould to act as brokers for the defendant in the purchase of any interest in the Wendel case.

"2. Plaintiff failed to prove by any evidence that A. B. Davis was an agent of the Hutchinson Oil and Gas Company.

"3. There is no evidence that Davis was authorized by the defendant company to employ Gould and Goering as brokers to negotiate for the purchase of an interest in the Wendel lease.

"4. That there was no consideration shown for any alleged contract between *Davis* and the alleged brokers.

"5. The verdict of the jury was contrary to the evidence."

In the consideration of this argument it is pointed out to us that defendant did not stand upon its demurrer, but proceeded to introduce its evidence. The record discloses that some evidence introduced by the defendant tended to prove the cause of action of plaintiff. In such a case where this court hears an appeal from an order overruling a demurrer to the evidence, we shall consider the evidence introduced by the defendant, as well as that of the plaintiff. (See *Railway Co. v. Bentley*, 78 Kan. 221, 93 Pac. 150; *Pine v. Bank*, 63 Kan. 462, 65 Pac. 690; also, *Railroad Co. v. Cross*, 58 Kan. 424, 49 Pac. 599.)

On this account we shall consider the argument of defendant on its demurrer to the evidence and on its motion to set aside the verdict on the ground that the evidence was insufficient to prove any cause of action against the defendant and in favor of the plaintiff.

The first argument of defendant is that the evidence failed to prove that Davis made a contract with either Goering or plaintiff to act as brokers for the defendant in the purchase of any interest in the Wendel lease. We shall examine the evidence on this point. It should be noted here that a great deal of the evidence is not disputed.

The first witness for plaintiff was J. F. Burton. He testified that he was an officer in the Harburney Oil Company, which owned a fraction less than a half interest in the Wendel lease in 1935. He recalled negotiations with the Hutchinson Oil & Gas Company, which started about the middle of July. He first learned about plaintiff when Goering called him from McPherson and asked if they were interested in selling the lease—they were negotiating with the Phillips Petroleum Company—and he told Goering if that fell through they would be glad to negotiate with his parties. The next time he heard from either Gould or Goering, Goering called in the evening and Gould called the next morning and wanted to know if they were interested in making a deal. He learned in this conversation that defendant was interested. Some days later he got in touch with Gould. Later there was a meeting at a room in the Allis hotel. Anderson, Hess and Cores were present—he was in two conferences—one with Goering and Gould and another with officers of the Harburney relative to a commission. He testified—

"Goering asked me if we were going to take care of them 'a little bit on the deal,' and I said, 'No.' Goering then said, 'Well, we just thought both sides ought to take care of us a little bit. The Hutchinson Oil and Gas Company had agreed to take care of us for some.'"

He testified further the average broker's commission for handling such as the sale of the Wendel lease would be around ten percent.

The next witness was Harvey E. Anderson. He testified that he was receiver of the Harburney Oil Company; John Burton was the first person who called him about plaintiff being interested in the Wendel lease; he met Goering and Davis in his room at the Allis hotel; at that time he thought Goering and Davis were brokers; he made it plain that Harburney would pay no commission; Davis said they would take care of the commission; negotiations continued for two or three weeks; after he met Goering at the hotel neither Goering nor Gould were present at any of the negotiations.

Gould was the next witness. He testified that he lived in McPherson in 1935; Goering also lived in McPherson; the first work he did in connection with the Wendel lease was to call John Burton; before this call he talked to Jack Davis at the Harburney well; he first saw Davis at his office. Mr. Youker was present; he told them about the Wendel lease because it was near a lease he wanted to sell. He testified further—

"On the way back from Rice county the conversation switched to the Wendel lease owned by Harburney. I asked Davis what he thought about my lease. Davis said he didn't think they were interested. I was asking $5,000 for it. Davis said he would be interested in trying to buy the oil well and told me if I knew the parties to get in touch with them. Goering said he knew them, too, and Davis said he would be more interested in the oil well than the lease. We drove out in Davis' car—had left Goering's car in Hutchinson. When we got back Davis told us to 'be sure to get in touch with the owners of that lease and see if you can make an appointment for us.'"

Gould further testified—

"Later Davis and Youker talked to Goering at McPherson. I later put up the money for a phone call to Wichita to John Burton; Goering did the talking. After talking to Burton, Goering called Davis and told him he had made an appointment with Harburney to meet at the Allis hotel the next day. The next day I went to Wichita with Goering. Met Jack Davis at the Allis hotel. Goering and Davis went up to Doc Anderson's room. I stayed down in the lobby. I wasn't present in Doc Anderson's room."

He testified further that he and Goering talked to Davis about a commission and he said they could not pay any commission until the board of directors met. On cross-examination he testified that

at the time they talked to Burton he thought they might get a commission out of Burton and that was after he talked to Davis.

After this, several witnesses testified that the customary commission on such a deal was ten percent.

The evidence of defendant with which we are interested is that of Youker—that he was president and general manager of the Hutchinson Oil and Gas Company.

On the hearing of a demurrer to the evidence or of a motion to set aside the verdict because it is contrary to the evidence, the plaintiff is entitled to all reasonable inferences that may be drawn from the evidence to sustain this cause of action. When this rule is followed we are led to the conclusion that this evidence was sufficient to require submission to the jury of the question of whether Davis as agent of the defendant requested Goering and Gould to get in touch with the owners of the Wendel lease and get an appointment for them; of whether Youker, the president and general manager of defendant, approved Davis' acts and conduct with Goering and Gould when he took Davis to McPherson to see Goering and asked him to contact the owners of the Wendel lease, and by his telling Goering to get an appointment so they could see Burton about the lease; of whether it also showed that defendant accepted the services of Goering and Gould when its agent, Davis, met them at the Allis hotel and was introduced to the owner of the Wendel lease by Goering; and whether defendant was benefited by the services by enabling it to purchase an interest in this lease, and defendant recognized an obligation to pay for the services of Goering and Gould by the statement that they would take care of the commission.

Defendant cites several definitions of the word "broker" and argues that the evidence did not establish that either Goering or Gould were brokers. The liability of defendant does not depend so much on whether the activities of Gould and Goering made them brokers, but upon whether they were employed to do the things set out in the petition, and whether they did them. Furthermore, the evidence in the record is sufficient to require the submission to the jury of the question of whether they were brokers.

Defendant points out the testimony heretofore set out that Gould thought he might get a commission from the Harburney company and argues that there is evidence that he was acting for both parties and in bad faith, which prevented him from being entitled to recover

from either party. The contract of employment pleaded was merely one to bring the parties together so they could do their own trading. Under such circumstances, the rule laid down in 8 Am. Jur. 1083, applies. That rule is as follows:

"The authorities are practically unanimous in holding that a broker employed as a mere middleman, or in other words one engaged not to negotiate a sale or purchase, but simply to bring two parties together and permit them to make their own bargain, may recover an agreed compensation from either or both, although neither may know that compensation is expected from the other."

Defendant next argues that plaintiff failed to prove by any evidence that A. B. Davis was an agent of the defendant. On this point, besides the evidence that has already been set out here, Youker testified:

"I am president and general manager of the Hutchinson Oil and Gas Company which has been in operation since 1932. The first I heard of the Wendel lease was when Davis called me one evening the first of July, 1935. The next morning I talked to Davis about the lease and finally we drove out to look at it. We left the Wendel lease and drove to McPherson. I left Davis in McPherson and drove on out to Galva. I later drove back and picked up Davis."

All this evidence required a submission to the jury of the question of whether Davis was acting under the instructions of Youker, the president and general manager of defendant.

The next point argued by defendant is that there was no evidence that Davis was authorized by defendant to employ Goering and Gould. The evidence that has been heretofore set out was sufficient to warrant the court in submitting to the jury the question of whether Davis was acting with Youker, the president of the company, and whether the company, by purchasing, ratified the actions of Davis and Youker. The employment of Goering and Gould was all a part of the transaction whereby they bought the lease.

The defendant next points out that it offered to prove by Davis that he did not have authority to pay a commission to Gould and Goering and the trial court refused to admit this evidence and that defendant offered to prove the same thing by Youker with the same result. This ruling is urged as error on the part of the trial court. The particular question was as follows:

"Q. I will ask you, Mr. Davis, whether or not you were ever authorized by the board of directors to pay Mr. Goering or Mr. Gould any commission in connection with this transaction?"

As to Youker, the following question was asked:

"Q. Mr. Youker, do you know whether Mr. Davis was ever authorized to arrange for the payment of any commission of any kind in the purchase of this lease?"

Objections were sustained to these questions.

Those two rulings are urged as error. The rulings were both correct. In the first place, it did not make much difference whether the board of directors authorized the payment of the agent once the corporation had received the benefit of their efforts. The general manager of the company had implied authority to hire the agents to get them the interview. (See *Manross v. Oil Co.*, 88 Kan. 237, 128 Pac. 385.) Once the agents were hired and had performed the services for which they were hired and the corporation had taken the benefit of these services, the officers of the company could not be heard to say that the board of directors had not authorized payment for these services. In 2 Thompson on Corporations, 3d ed., p. 1110, the rule is stated as follows:

"A corporation may be bound by unauthorized acts of its officers within the scope of the corporate purpose where it knowingly adopts or ratifies such acts, as, for example, by knowingly receiving and retaining the benefits, or by unreasonably delaying a repudiation of the unauthorized act. But the ratification cannot be accomplished by the delinquent officials. The burden of proving a ratification of an unauthorized official act is upon the person seeking to enforce the contract. Ratification may be established by circumstantial evidence. Again, the principle of estoppel may operate to prevent the corporation from denying the authority of an officer to contract.in its behalf where it holds him out as possessing the authority."

Defendant next argues that there was no consideration shown for the contract between Davis for the corporation, on one hand, and Goering and Gould. The evidence that has been set out shows that Gould and Goering did just what they were employed to do, that is, that they got the owners of the Wendel lease and the officers of the defendant together so they could negotiate for the purchase of the lease.

Defendant next argues that commissions are usually paid by the seller. That perhaps is true, but no reason is shown why a buyer could not agree to pay a commission. There is evidence in this case that Davis said, "We will take care of the commission." In *Miller v. McGinnis*, 104 Kan. 524, 180 Pac. 267, this court approved a judgment giving an agent for a buyer a commission.

Defendant next argues that the employment of Goering and Gould was at the Allis hotel when Davis said, "We will take care of

the commission," and that the services were performed after the employment. The fact is their employment began at the time of the first trip to the Shurtz lease. The statement of Davis to which reference was made was only a circumstance tending to prove the employment.

The next argument of defendant is that if the obligation rested upon Burton or any of the vendors to pay the broker's commission, then the alleged oral promise made by Davis was to answer for the debt, default, miscarriage of another, and was within the statute of frauds. The trouble with that argument is that we have demonstrated that the obligation to pay the commission did not rest upon Burton or the vendors but upon the defendant who employed Goering and Gould in the first place.

The next argument of defendant that the verdict of the jury was contrary to the evidence has been considered along with the demurrer to the evidence. This brings us to the proceedings with reference to the motion for a new trial. It will be noted that the trial court at first held that the verdict was excessive and ordered that unless the plaintiff would remit the sum of $1,250 from the verdict of $2,500 before a certain date a new trial would be ordered. Subsequently the plaintiff asked the trial court to reconsider this order and in this motion stated that if this motion should be denied he decided to remit one-half the judgment provided the defendant would pay the judgment promptly and would not appeal. To this motion, the trial court ordered defendant to pay one-half the verdict and announced that if this were not done the judgment and verdict theretofore rendered in the amount of $2,987.91 would be the final judgment of the court. Defendant has seen fit not to pay this judgment in the reduced amount and the appeal is here from all orders and judgments.

With such a record, it is apparent that the trial court did not approve any verdict except for one-half the amount found with interest. It is a long-established rule of this court that a verdict must be approved by the trial court without any conditions before the verdict may be the basis of a judgment on appeal. Following that rule, we hold that the judgment in this case may not be for more than one-half of $2,500 with interest, as held by the trial court in the order of December 17.

It is therefore ordered that if the plaintiff will file with the clerk of this court within ten days of the filing of this opinion his consent

to remit one-half of the judgment in this case, the judgment of the trial court is affirmed—otherwise it is reversed with directions to grant defendant a new trial.