### MONTGOMERY WARD & CO. v. CALLAHAN.
#### No. 2388.

Circuit Court of Appeals, Tenth Circuit.
March 24, 1942.

Ralph W. Oman, of Topeka, Kan. (L. E. Oliphant, Jr., of Chicago, Ill., and Robert Stone, James A. McClure, Robert L. Webb, and Beryl R. Johnson, all of Topeka, Kan., on the brief), for appellant.

Donald C. Little, of Kansas City, Kan., and Ira C. Snyder, of Manhattan, Kan. (Frank L. Bates, of Kansas City, Kan., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Alma Callahan, an insane person, by Lewis Callahan, her husband, as guardian, instituted suit against Montgomery Ward & Company, herein called the Company, in the District Court of the United States for the District of Kansas, to recover the sum of $45,000 damages for personal injuries suffered as a result of the negligence of the Company, and the further sum of $15,000 for the use and benefit of her husband. By answer the Company entered a general denial and plead specially an accord and satisfaction resulting from a release executed by her. Appellee by reply plead that the release was of no effect because it was executed as a result of mutual mistake of fact, that the Company's agents had conspired to fraudulently deceive and coerce her into executing the release and that defendant was estopped thereby to rely on the release as a defense.

The release upon which the Company relied is a strong one. In it appellee accepts the sum of $200 and the payment of the doctor's bill in full settlement and satisfaction and as consideration for a final release and discharge of "all actions, claims and demands whatsoever, that now exist, or may hereafter accrue against Montgomery Ward & Co., and any other person, corporation, association or partnership charged with responsibility for injuries to * * * the Undersigned, * * * and the consequences flowing therefrom, * * *.

"The Undersigned Warrants, that no promise or inducement has been offered except as herein set forth; that this Release is executed without reliance upon any statement or representation by the person or parties released, or their representatives,

or physicians, concerning the nature and extent of the injuries and/or damages and/or legal liability therefor; * * *.

"The Undersigned Agrees, as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident * * * as well as those now disclosed." It evidences an intent to settle not only present known damages and pending actions, but also any that might arise in the future.

■ The Company's position is that where, as here, parties contract with reference to all possible unknown and unanticipated injuries, mutual mistake as to the nature and extent of the injuries becomes immaterial and the release may not be set aside for that reason. The soundness of this position must be determined from the laws and decisions of Kansas. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In Smith v. Kansas City, 102 Kan. 518, 171 P. 9, 10, the Supreme Court of Kansas considered a release purporting to release and discharge all demands, claims, past, present and future, for a nominal consideration. Considering this release, the court said: "It is not only fair, but reasonably clear, therefore, that both parties were acting under a misapprehension of a real condition—in other words, were mutually mistaken; and it must go without saying that in view of the real condition the amount paid was beyond all question inadequate."

In Rider v. Kansas City Terminal R. Co., 112 Kan. 765, 212 P. 678, 679, the Kansas Supreme Court considered a release which released the company from "any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent * * *." It released the company from "all causes of actions and claims for injuries and damages, which I have, or might have, arising out of such injuries * * *." It provided that it was "the intention of the parties that all matters of difference between them shall be and are hereby compromised and settled." It further provided: "In making this settlement I do not rely upon any statement of any doctor, physician or surgeon as to what my physical condition was, is or will be in the future, as a result of my injuries, and I do not make this settlement because of what any-

one has told me about what condition is or will be. I have read this release. I know that I am settling for everything and that no representations of any kind have been made to me." Notwithstanding this strong language, the Supreme Court of Kansas held that the evidence was sufficient to submit to a jury the question of mutual mistake as to the nature and extent of injuries suffered.

■ If a set of facts understood and believed by two parties induced them to execute a contract which they would not have executed had they known or believed the facts to be otherwise than understood by them, then why in all fairness and good conscience should it not be set aside, no matter what the contract itself said?

From appellee's evidence it substantially appears that: John Walker, an employee of the Company, was waiting on appellee when the accident occurred; that he had the right to leave the store any time he wanted to; that the accident occurred on the afternoon of April 20, 1938; that on the evening of April 21 he came to appellee's home; that on the evenings of April 22 and 23 he came back and told appellee and her husband that the Company would have to make a good settlement; that they should not get an attorney; that if they did the attorney would get all and they would get nothing; that he was on the inside and could find out and keep them posted on what was going on; that he was there every night with the exception of one or two, until the settlement was made; that he told them that he had been to Kansas City to see a lawyer friend of his and that he had been informed that there was not much chance for them to get anything out of it. The day before the settlement, Walker came back and told them he had seen the doctor's reports and had examined them, that appellee was only slightly injured and would soon recover; that Dr. Colt's report showed that she could have been released two weeks before; that a claim agent of the company was coming to offer them $200 and that they had better take it because the doctor's report showed that she had not been injured in any way; that on the day of the settlement, appellee's husband went to the Company's store at Manhattan where he talked to Clifton and Bingamon, the claim adjuster and store manager for the Company, respectively; that Bingamon said he had talked to one of the doctors and had seen the reports of the

others, and that there was nothing wrong with Mrs. Callahan.

 Taking this testimony as true, it clearly appears that appellee and Walker believed that the reports of the doctors established that appellee's injuries were slight. The Company, however, contends that it is not chargeable with either the belief or the statements of Walker, as he had no authority to represent or bind the Company. This ignores the testimony that Bingamon, who was the Company's representative, made similar statements. But aside from that, the Company may not accept the beneficial results of Walker's work and at the same time escape its burdens by repudiating him. 2 C.J.S., Agency, § 49, p. 1097; 2 Am.Jurisprudence, § 227, p. 183; Gould v. Hutchinson Oil & Gas Co., 150 Kan. 516, 95 P.2d 301.

Another ground urged to set aside the release was that Walker, Clifton and Bingamon conspired to defraud appellee and coerce her into executing the release. On May 17, the day the settlement was made and the release was executed, Walker appeared at the place where Callahan was working and told him the Company was going to offer his wife $200 and that they had better take it. Later that day, Clifton and Bingamon appeared at the home and offered appellee $200. Bingamon at that time stated that the doctor's report showed only slight injury. Appellee replied that "If the doctor's reports say I am not injured, I might just as well sign it." When the release was signed, Bingamon produced $200 in cash and paid her. The settlement was made about 6 P. M. Almost immediately after Bingamon and Clifton left, Walker reappeared and said, "I see you have made a settlement." He collected $50 and left, and apparently lost all further interest in the Callahans. Walker seems to have been fully conversant with the plans of the Company regarding the settlement. For complete strangers, the efforts of Walker, Clifton and Bingamon synchronized perfectly and produced a result which perhaps would not have been brought about except for this accidental cooperation.

 The Supreme Court of Kansas has held that while inadequacy of consideration alone may not be sufficient to set aside a release, such a release would be closely scrutinized and viewed with suspicion. Orr v. Missouri Pac. R. Co., 98 Kan. 120, 157 P. 421; Railway Co. v. Cunningham, 59 Kan. 722, 54 P. 1055. It is difficult to believe that appellant would have asked appellee to accept the paltry sum of $200 if there had been any question of serious injury or belief that the injuries were other than trifling. An analysis of all the testimony relating to the release leads us to conclude that the judgment of the court setting it aside is sustained by competent evidence.

Error is predicated on the ruling of the court denying a motion for a directed verdict, overruling the Company's motion to set aside the verdict and judgment, and denying its motion for judgment notwithstanding the verdict.

It is alleged in the petition that on the day of the accident, appellee had gone to the Company's store to purchase merchandise; that through the negligence of the Company she was struck and crushed to the floor by a roll of linoleum weighing more than 250 pounds; that as a result thereof she was crushed and bruised about the head, face, chest, shoulders, back and spine, received a concussion of the brain, and was otherwise injured; that prior to the accident she was in good health; that as a result of the accident and injuries she would continue to suffer constant pain and anguish, and has been rendered hopelessly and permanently insane. The jury returned a verdict of $8,400, of which $2,100 represented the wife's recovery for the benefit of her husband.

 The Company introduced testimony showing that appellee had a number of near relatives who were insane, thereby attempting to prove that insanity was hereditary in her family. It also offered the testimony of a number of medical experts who testified that appellee was suffering from dementia praecox. They testified that dementia praecox was functional and would not result from a trauma. Appellee, however, offered the testimony of Dr. Bills, a practicing physician of Kansas City, Missouri, who specializes in mental and nervous diseases. He has also been an associate instructor of nervous and mental diseases at Kansas University for twelve years. In answer to a hypothetical question, he stated that the blow would be the cause of her condition. He testified that a blow can be the sole cause of any mental deterioration, either dementia praecox or other form of insanity. The medical experts disagreed on whether a blow could have caused her condition. The jury chose to believe the expert testimony offered by appellee. The court approved the verdict and entered

judgment thereon. The verdict and judgment are not without support of competent testimony and therefore may not be set aside by us.

Section 23-205, General Statutes of Kansas, 1935, provides: "That where, through the wrong of another, a married woman shall sustain personal injuries causing the loss or impairment of her ability to perform services, the right of action to recover damages for such loss or impairment *shall vest solely in her,* and any recovery therefor, so far as it is based upon the loss or impairment of her ability to perform services in the household and in the discharge of her domestic duties, shall be for the benefit of her husband * * *."

The Company contends that that portion of the petition which seeks to recover for the benefit of the husband for loss of household services and domestic duties may not be maintained because the statute vests the right to maintain that action solely in the wife, and it may not therefore be maintained by the guardian of the wife. It cites in support of its position Wright v. Smith, 136 Kan. 205, 14 P.2d 640, where it was held that an action for wrongful death would not survive the death of the wrongdoer. What was held there was that the cause of action ended with the death of the tort-feasor. The question of who might maintain an action was not involved. It was held that there was no action to maintain.

■■ Prior to the passage of this act a wrongful injury to a wife might result in two separate causes of action, one for the loss of earnings from labor or services other than household or domestic services. Such loss was her loss, for which she alone could maintain an action. Damage for the loss of domestic or household services accrued to the husband and an action to recover the same could be maintained only by him. City of Wyandotte v. Agan, 37 Kan. 528, 15 P. 529. The statute under consideration here does not create two separate rights, one for the wife and one for the husband which she maintains for his benefit. It creates in her a single right, the right to maintain an action against the wrongdoer for all loss suffered as a result of her injuries. This right is placed in the wife. Taylor v. S. H. Kress & Co., 136 Kan. 155, 12 P.2d 808. We can read nothing into the statute which would require splitting up a single cause of action belonging to the insane wife, solely on the ground that part of the recovery inures to the benefit of the husband.

■ The final contention is that the action is barred by the statute of limitations. Kansas law requires an action based on tort to be commenced within two years. Section 60-306, General Statutes of Kansas, 1935. Appellee was injured April 20, 1938. On August 16, 1939, she filed an action against the company in a state court. This action was dismissed without prejudice April 12, 1940. March 14, 1940, she was adjudged insane by the Probate Court of Shawnee County, Kansas, but no guardian was appointed until July 30, 1940. On April 13, 1940, this action was filed by Alma Callahan, by Lewis Callahan, her husband, as guardian ad litem. June 12, 1940, the Company moved to dismiss the action on the ground that it could be maintained only by a legally appointed guardian. On August 30, 1940, after he had been legally appointed guardian of appellee, Lewis Callahan, as guardian, asked to intervene and be substituted as plaintiff in the pending action. The application was granted and an order substituting him as guardian of appellee as plaintiff was entered September 13, 1940. The Company's position is that no action was pending on April 20, 1940, when the statute of limitations barred the claim, because it could not be maintained by a guardian ad litem under the laws of Kansas. The right to recover is substantive and is therefore controlled by the laws of Kansas. Erie R. Co. v. Tompkins, supra. How appellee was required to proceed, in whose name the action must be filed, is procedural, and therefore determined by the law of the forum. Rule 17(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, among other things, provides that where an incompetent person does not have a duly appointed representative, he may maintain an action by his next friend or guardian ad litem. The action was therefore properly instituted in the United States District Court in the name of the guardian ad litem and when a legal guardian was appointed, he was rightly substituted in his place. But, even if the law of Kansas is applied, the result is the same. It has been decided by the Supreme Court of Kansas that where a cause of action is instituted by one not authorized to maintain it and thereafter the proper party plaintiff is substituted in his place, the substitution relates back to the commencement of the action

and the statute of limitations stops running as to the substituted plaintiff from the filing of the original action, rather than from the date of the substitution. Harlan v. Loomis, 92 Kan. 398, 140 P. 845; Williams v. Missouri Valley Bridge & Iron Co., 111 Kan. 34, 206 P. 327.

Affirmed.