J. R. MANN, Administrator of the Estate of Kenneth Wayne Mann, Deceased, and Walter Mathis and Cathy Mathis West, Co-Administrators of the Estate of Jimmy Wayne Mathis, Deceased, Plaintiffs,

v.

Roy Robert De MOSS, Defendant.

Civ. No. 10-97-C-2.

United States District Court, S. D. Iowa, Central Division.

March 16, 1971.

John R. Ward, Des Moines, Iowa, for plaintiffs.

Ross H. Sidney and Henry A. Harmon, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This ruling is predicated upon defendant's motion for judgment on the pleadings.

The pleadings on their face show the following uncontroverted facts: On September 10, 1968, two teen-age boys were killed as a result of a motorcycle-truck collision in Boone County, State of Iowa. Defendant herein is the truck driver and a citizen of Iowa. Plaintiffs herein are decedents' administrators; decedents were citizens of the State of Mississippi.

On September 1, 1970, plaintiffs, who were appointed administrators by a Mississippi state court, obtained authority from the Mississippi state court to initiate this suit in the United States District Court in Iowa or in such other court as might have jurisdiction.

On September 8, 1970, this action was commenced in this Court. On September 10, 1970, the applicable statute of limitations expired. On September 18, 1970, defendant moved to dismiss plaintiffs' complaint for failure to comply with Sections 633.148, 633.149, Iowa Code 1971:

*633.148 Maintaining actions.* When there is no administration of an estate nor a petition therefor pending, in this state, a foreign fiduciary may maintain actions and proceedings in this state subject to the requirements and conditions imposed upon nonresident suitors generally.

*633.149 Filing of bond.* At the time of commencing any action or proceeding in any court of this state, the foreign fiduciary shall file with the court an authenticated copy of his appointment, and of his official bond, if he has given a bond. If the court believes that the security furnished by him in the domiciliary administration is insufficient to cover the proceeds of the action or the proceeding, or for any other reason or cause, it may at any time order the action or proceeding stayed until sufficient security is furnished in the action or proceeding.

At that time, the Court allowed plaintiffs to amend their complaint to comply with the Iowa statutes and overruled the motion to dismiss.

Subsequent thereto, defendant filed an answer. The defendant then moved for judgment on the pleadings, in conformity with Rule 12(c), Fed.R.Civ.Pro., on the ground that the plaintiffs had failed to perfect jurisdiction in this Court within the period of the statute of limitations.

Plaintiffs argue that their amendment on September 21, 1970 should relate back to the time of the filing of the complaint. They rely principally on the fact that they had secured proper authorization from the Mississippi state courts prior to the running of the statute.

Defendant contends that regardless of when plaintiffs secured the authorization, their failure to comply with the Iowa statutes on foreign administrators at the time the complaint was filed is a complete bar to their action and that relation back is not permitted. In short, defendant contends that plaintiffs did not effectuate their causes of action within the time allowed by the statute of limitations.

The first issue the Court must resolve is whether it is bound by the Iowa statutes, sections 633.148 and 633.-149, in resolving the issue at hand. There can be no dispute but that the federal court is bound by state law in determining the capacity of an individual to sue in a representative capacity. Rule 17(b), Fed.R.Civ.Pro., states that the capacity of an individual acting in a representative capacity to sue shall be determined by the law of the state in which the district court is held.

This rule finds its genesis in Moore v. Mitchell, 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673 (1930) wherein the Supreme Court stated that foreign administrators are without legal capacity to sue in the federal courts of the situs state.

Thus, this Court starts from the premise that Iowa law must be applied in determining whether plaintiffs' failure to comply with the Iowa statutes is a fatal defect.

The common-law rule in respect to the right of a foreign fiduciary to sue in states other than the appointing state was very simply that he could not. Judge Graven in Knoop v. Anderson, 71 F.Supp. 832, 842 (N.D.Iowa 1947), discusses the common-law rule in respect to foreign fiduciaries. Judge Graven states that "it was a well-settled rule that an executor or administrator cannot sue outside the state of his appointment" and further that "it has been the rule in Iowa from an early period that an executor or administrator cannot maintain a suit in this state by virtue of appointment in another state." Consequently, foreign fiduciaries were required as a condition precedent to bringing suit in another state to obtain ancillary letters of administration in the forum state. The basis for such a rule was to afford protection to the decedent's creditors in the forum state. Whenever the foreign fiduciary could show that local creditors would not be affected by the proceeding, the Iowa court did allow the foreign appointee to go forward even though not having obtained ancillary letters. Gross v. Hocker, 243 Iowa 291, 51 N.W.2d 466 (1952); Knight v. Moline, E. M. & W. R. Co., 160 Iowa 160, 140 N.W. 839 (1913).

The 60th Iowa General Assembly presumably rendered nugatory Iowa's common-law rule respecting foreign fidu-

1128

ciaries in enacting Chapter 633, Sections 633.148, 633.149. Section 633.148 states very clearly that foreign fiduciaries may maintain law suits in Iowa subject to certain requirements. Section 633.149 sets forth these requirements: At the time the action is commenced, the foreign fiduciary shall file an authenticated copy of his appointment and of his official bond, if any.

Unfortunately, these statutes are relatively recent and the Court has been unable to find any subsequent Iowa case law. The issue of whether plaintiffs' claims are barred by the statute of limitations for failure to comply with the statutory requirements appears, therefore, to be one of first impression in Iowa jurisprudence. The Court's task is, consequently, to render an informed prophecy as to how the Supreme Court of Iowa would decide if the issue were presented to that judicial body for determination.

The Court has researched this issue extensively and believes the following quotes from authoritative treatises provide a helpful starting point:

The majority of states now have statutes which permit foreign executors and administrators to sue, although they often require the foreign representative to comply with certain conditions, such as recordation of a copy of his letters in a specified office. In a federal court held in a state which has such a statute the foreign representative has capacity to sue by virtue of the last sentence of subdivision (b), but he should comply with conditions of the state statute. 3A Moore's Fed.Prac., para. 17.19 at 696.

Under the third sentence of Rule 17(b), the capacity of persons acting in a representative capacity * * * to sue or be sued is determined by the law of the state in which the district court is held.

This rule applies to executors and administrators. * * * Thus, if state law requires a foreign administrator to obtain ancillary letters of administration or to give bond before

suing in a state court, a foreign administrator must comply with these requirements in order to sue in a federal district court in that state. 2 Barron & Holtzoff, Federal Prac. & Proc., Section 486.

It has been held that a domiciliary administrator who commences an action for wrongful death in a foreign jurisdiction and is refused the right to maintain such action until ancillary letters are obtained in the state of the forum may set up his ancillary administrative authority by amendment, even though the period of time to commence the action has intervened, so as to preclude the institution of a new action where the ancillary administration was required for the protection or convenience of the parties, since, in such a case, there is merely the substitution of one qualified representative for another, and not the commencement of a new action. However, in a jurisdiction in which a foreign domiciliary representative is held unauthorized to sue without taking out ancillary administration in the state of the forum, it has been held that an amendment may not be made, so as to change the source of the plaintiff's administrative authority, after the passage of the applicable period of limitations. 51 Am.Jur.2d, Limitations of Actions, section 261.

While the passages quoted only provide general guidelines, the cases cited in support thereunder are of some assistance to the Court in determining what the Iowa Supreme Court would do in a similar situation. The majority of the cases in comparable situations have held that the failure of the foreign fiduciary to comply with the state statute within the applicable statute of limitations is a complete bar to the maintenance of such action. *See, e. g.,* Langford v. Merickel, 199 F.Supp. 424 (D. Minn.1961); Fitch v. Firestone, 184 F. Supp. 424 (R.I.1960); Seymour v. Johnson, 235 F.2d 181 (6th Cir. 1956); Gidinski v. McWilliams, 308 F.Supp. 772 (D.C.Or.1970). There are cases the

other way, though most are cases involving Pennsylvania law which adopts a liberal attitude in regard to amendment. Bolitho v. Buch, 14 F.R.D. 245 (E.D.Pa. 1952); Frankel v. Styer, 209 F.Supp. 509 (E.D.Pa.1962); Brennan v. Rooney, 139 F.Supp. 484 (E.D.Pa.1956); Greene v. Goodyear, 112 F.Supp. 27 (M.D.Pa. 1953); Montgomery Ward & Co. v. Callahan, 127 F.2d 32 (10th Cir. 1942). In many of these Pennsylvania cases, however, the action had been started by a party with capacity to sue and the courts readily permitted substitution of another competent party.

The Court has also looked to the statute itself in attempting to ascertain the legislature's intent and what the Iowa Supreme Court might do. As previously stated, until the enactment of the statute in question, Iowa followed the common-law rule, with a few exceptions, that a foreign fiduciary could not sue outside the state of his appointment. The legislative enactment, Sections 633.-148 and 633.149, removes any such restriction. Using the rule of statutory construction that any statute in derogation of the common-law must be strictly construed, the plain reading of the statute, particularly in light of the use of the words "at the time of commencing" and "shall" in section 633.149, suggests that plaintiffs' failure to comply within the period of limitations is a fatal defect. *See* Langford v. Merickel, *supra*.

Finally, in attempting to surmise what the Iowa court would do in an identical situation, the Court has carefully studied prior Iowa case law. In Pearson v. Anthony, 218 Iowa 697, 254 N.W. 10 (1934), decedent's widow brought suit as administratrix against defendant within the applicable statute of limitations. Defendant timely raised the issue of the administratrix' capacity to sue alleging that no administrator had been appointed for the estate. Subsequent to the expiration of the statute of limitations, decedent's widow obtained letters of administration. Defendant raised this lack of capacity as a complete bar to the action against him.

On appeal to the Iowa Supreme Court, that court stated that the issue in the last analysis was "whether the acts of the individuals pretending to act as administrators were effective to commence the action and thereby avoid the bar of the statute of limitations." The Iowa court held that the action was barred in that plaintiff had no capacity to sue, that such was a fatal defect and that plaintiff's petition should be dismissed.

In *Pearson*, the court made the following statements in respect to their holding:

> The courts of other jurisdictions are not in accord. In some states it is held that the appointment upon being made relates back to the date of the death of the decedent. In such states this action could be prosecuted to final judgment. In other states it is held that, even though the appointment does relate back to the date of the death of decedent for many purposes, an action commenced the same as the one before us cannot be prosecuted to judgment by the duly appointed administrator. This court recognizes that the appointment of an administrator relates back to the date of death of the decedent for many purposes * * * [but not in this case].

In Gross v. Hocker, 243 Iowa 291, 51 N.W.2d 466 (1952), a Wisconsin administrator brought suit in Iowa to recover damages for his decedent's wrongful death. Defendant Hocker moved to dismiss the petition on the ground that plaintiff had not qualified as ancillary administrator in Iowa until after the suit was commenced (although before the statute of limitations had run). The trial court sustained the motion and plaintiff appealed. The Supreme Court of Iowa reversed on the ground that the only purpose for the common-law rule requiring ancillary appointment was to preserve property within the state to protect local citizens who might have claims against it. The Court relied on an Iowa statute which exempted wrongful death damages from payment of debt

and approved the concept that foreign administrators are barred from our courts only when (1) there are domestic creditors and (2) where the foreign administrator sues to recover a fund in which such creditors may share. The Iowa court thus found the reason for the common-law rule non-existent and allowed plaintiff to maintain the action as a Wisconsin administrator.

On the question of plaintiff not having qualified as an ancillary administrator at the time the suit was commenced, the Court held that plaintiff was still entitled to maintain the suit. The Court noted that the plaintiff did qualify as ancillary administrator prior to the filing of the motion to dismiss. The Court also specifically pointed out that the lateness of the qualification was in no way prejudicial to defendant in that he would have the identical defenses.

The Court believes the Gross v. Hocker case to be of little assistance. *Gross* did not involve a situation where the foreign fiduciary failed to qualify within the period of the statute of limitations. Further, the legislative enactments, sections 633.148, 633.149, would appear to preclude the court from using any two-pronged test in determining whether a foreign fiduciary could maintain suit in this state. Furthermore, one of the bases for that decision no longer exists because the statutory provision exempting proceeds of a death action from the claims of any creditor has been changed and Iowa Code Section 633.336 makes such proceeds subject to the claims of certain creditors.

That, of course, leaves the Court with the case of Pearson v. Anthony, *supra*, which expresses the Iowa Court's reluctance to allow relation back when the statute of limitations is involved. Certainly the Court is hesitant to predict what the Iowa Supreme Court would do in a like situation when the only case close on point is a 1934 opinion which offers little comfort in attempting to construe a statute enacted approximately thirty years later with no subsequent judicial history. In any event, however difficult the task may be and absent any certification procedures, the Court is required to render its best judgment as to how nine other judges would act.

Thus, it is this Court's opinion, based on the statements contained in the various authoritative treatises and the apparent majority rule in other states, the construction of the statute in question, and, most importantly, the relevant case law of Iowa, that plaintiffs' failure to file an authenticated copy of their appointments at the time this suit was commenced and within the two-year statute of limitations, is a fatal defect not curable by amendment and relation-back.

The Court recognizes the harshness of such a holding in this case especially when viewed in the paucity of state judicial enlightenment. However, the Court acknowledged to counsel for both sides at the time this matter was heard that this was a case of first impression and that undoubtedly the Court's ruling would be appealed. The Court has no reason to think differently today.

Accordingly, it is hereby ordered that defendant's motion for judgment on the pleadings will be sustained and that this action will be dismissed with prejudice at plaintiffs' cost.

## JUDGMENT.

Pursuant to Memorandum and Order filed herein,

It is hereby ordered, adjudged, and decreed that on defendant's motion for judgment on the pleadings, judgment is rendered for the defendant, Roy Robert De Moss, against the plaintiffs, and that plaintiffs' action is dismissed with prejudice.

It is further ordered that the costs of this action shall be taxed against the plaintiffs.