CONSTANTINE et al.

v.

SOUTHWESTERN LOUISIANA
INSTITUTE et al.

No. 4401.

United States District Court,
W. D. Louisiana, Opelousas Division.

April 22, 1954.

and permanent, was brought in the United States District Court for the Western District of Louisiana by four Negro youths, all residents of Lafayette, Louisiana. Three of the youths are minors who bring this action by their next friends. This action is brought as a class action. Plaintiffs seek for themselves and for all others similarly situated and qualified the right of being admitted to Southwestern Louisiana Institute, a State supported institution of higher learning, hereinafter referred to as "Southwestern."

The defendants have moved to dismiss the action in its entirety on the ground that a three-judge court has no jurisdiction of this cause. In the alternative, to dismiss the action as to the minor plaintiffs because they should not be permitted to sue through a mother and next friend, and in the further alternative, to dismiss the action as a class action on the ground that an action based on alleged deprivation of rights under the Fourteenth Amendment is personal to the individual.

In this action plaintiffs seek to enjoin the enforcement or execution of an order made pursuant to the policies or laws of Louisiana on the ground that either the policies or laws of the State or both violate rights secured to the petitioners under the Constitution and laws of the United States. The action was brought against State officers and was precisely drawn for the purpose of requiring the convening of a three-judge court under Section 2281 et seq., Title 28 U.S.C. The subject matter is properly cognizable by a three-judge court. Oklahoma Natural Gas Company v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; Wilson v. Board of Supervisors, D.C., 92 F.Supp. 986. Rule 17(c) of the Federal Rules of Civil Procedure, 28 U.S.C., provides that where an infant or incompetent person does not have a duly appointed representative he may sue by his next friend. This right cannot be abridged by a State statute. The action is properly brought as a class action under Rule 23(a) of the Federal

A. P. Tureaud, Sr., New Orleans, La., Robert L. Carter, New York City, Thurgood Marshall, New York City, U. Simpson Tate, Dallas, Tex., for plaintiffs.

Fred S. LeBlanc, Atty. Gen., State of La., W. C. Perrault, First Asst. Atty. Gen., James R. Fuller, Baton Rouge, La., J. J. Davidson, Jr., J. Clyde Pearce, Sp. Asst. Attys. Gen., State of La., for defendants.

Before BORAH, Circuit Judge, DAWKINS, Chief Judge, and HUNTER, District Judge.

HUNTER, District Judge.

This suit for a declaratory judgment and for injunctive relief, interlocutory

Rules of Civil Procedure. Defendants' motion to dismiss is accordingly denied.

The plaintiffs, and each of them, presented themselves for admission to Southwestern about September 15, 1953, ready, willing and able to pay all necessary and lawful tuition, fees and other expenses necessary for admission. They possessed all of the qualifications for admission to Southwestern except that each, and all of them, are Negroes. They were denied admission to the college solely because of their race and color. On or about September 25, 1953, the plaintiffs, and each of them, filed their appeals from this denial with the Louisiana State Board of Education, which is charged with the general supervision and control of Southwestern. On or about October 13, 1953, the plaintiffs, and each of them, were advised that the Louisiana State Board of Education had their appeals under consideration. The said Board had not advised them further as to their rights on January 4, 1954, the date on which the complaint herein was filed in this court.

It is conceded that the Louisiana State Board of Education, in the administration of Southwestern, has in the past, does now, and intends in the future, to make the facilities of Southwestern available only to qualified white applicants, and all Negro applicants will be refused the use and enjoyment of the plant and facilities of Southwestern, solely because of race and color, and because the Constitution and laws of the State of Louisiana provide for separate education of Negro and white students. This action of the administrative officers of Southwestern, and the officers and members of the Louisiana State Board of Education was based upon and taken pursuant to their interpretation of the Constitution and laws of the State of Louisiana [1].

Plaintiffs urge that the refusal of the defendants to admit them to Southwestern to pursue the college courses they seek constitutes a denial under color of Louisiana law, of educational opportunities, facilities and advantages substantially equal to those afforded white children in the locale of Lafayette, Louisiana. This, they claim, is in contravention of the Fourteenth Amendment to the Constitution of the United States, and the rights secured by Title 8, U.S. C.A. § 41, now 42 U.S.C.A. § 1981. They seek a declaratory judgment and injunctive relief precluding defendants from excluding plaintiffs from admission to the college as students upon the ground of their membership in the Negro race.

On the issue of discrimination, the material uncontroverted facts are these: Southwestern is one of six State supported white colleges in the State of Louisiana. These colleges are in addition to Louisiana State University and Southern University, both located at or near Baton Rouge, Louisiana. These six colleges are strategically and geographically located in the several sections of the State for the convenience of its majority white citizens, the purpose obviously being to make education available to more people and to make it possible for more people to stay at home and go to college at less expense. Southwestern is located in Lafayette Parish, Louisiana. There are no courses or educational facilities within a radius of 89 miles for qualified Negro college students which are equal or substantially equal to the courses and facilities made available to white students at Southwestern. However, there has been established in Baton Rouge, Louisiana an institution known as Southern Uni-

[1.] (a) Act 62 of 1898 established Southwestern Louisiana Institute "for the Education of the white children of the State of Louisiana in the arts and sciences."

Its name was changed to Southwestern Louisiana Institute of Liberal and Technical Learning by Section 9 of Art. 12 of the Constitution of Louisiana.

(b) Article XII, § 1 of the Louisiana Constitution reads:

"Separate public schools shall be maintained for the education of white and colored children between the ages of six and eighteen years".

versity, and at Ruston, Louisiana an institution known as Grambling College, both of which provide physical facilities equivalent in every respect to the physical facilities of Southwestern. The two last named institutions are maintained solely for Negroes and the course of instruction, the buildings, the courses offered, and all other elements make them the equal of Southwestern. Southern University is located 89 miles from Southwestern. Grambling College is located 216 miles from Southwestern. The distance is such that it would no doubt be economically impracticable to commute daily. A colored student of Lafayette would have to leave his home and take up residence elsewhere in order to go to a state college. White citizens could stay in Lafayette, attend Southwestern, and thus receive a college education.

The facts and circumstances being as related, the narrow question presented for our determination is whether discrimination prevails in the treatment accorded to persons of different races similarly situated and whether thereby the plaintiffs and those similarly situated are denied any rights secured them by the Constitution and laws of the United States. The facts and issues are almost identical to those in the Battle case [2], with the exception that there, the distances were 367 or 411 miles. Here, there is no question, just as there was no question in the Battle Case, but that the inconvenience and the loss of time and money imposed upon Negro students and their parents is real, genuine and severe.

■ We are not unmindful of the fact that public schools cannot be brought to every man's door, and must be located where they would do the greatest good for the greatest number. Some differentiation in the enjoyment of public school facilities is inevitable. However, manifest inequalities in the treatment of Negro students by public schools may not be condoned, since under the Fourteenth Amendment substantial equality is required. And, as was pointed out in Battle and the cases therein cited, the inconvenience and loss of time and money imposed upon Negro students by forcing them to attend distant schools exacts a toll on such students and their parents which is real and severe.

■ Article 12, § 1, of the Constitution of Louisiana, supra, provides for separate schools but it fails to set standards to insure equalitarian treatment of the separated groups. The Article of the State Constitution is not itself defective, but it must be so *administered* as to provide for *equal* accommodations for the white and colored races. Are there equal accommodations for the white and colored races located in the vicinity of Southwestern? The answer is admittedly No!

■ If there is any one purpose of the Fourteenth Amendment that is beyond the realm of doubt, it is that the amendment was designed to bar States from denying to some groups, on account of their race or color, any rights, privileges and opportunities accorded to other groups. Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249. The Supreme Court, in defining the meaning of the amendment, had this to say in Missouri v. Lewis, 101 U.S. 22, 25 L.Ed. 989:

> "If every person residing or being in either portion of the state should be accorded equal protection of the laws prevailing there, he could not justly complain of a violation * * *. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes of persons *in the same place and under like circumstances*." (Emphasis supplied).

■ The requirement of equal treatment is clearly one of equal treatment in

---

**2.** Wichita Falls Junior College District v. Battle, 5 Cir., 1953, 204 F.2d 632.

respect to any one facility or opportunity furnished to citizens, rather than a balance in State bounty to be struck from the expenditures and provisions for each race on a statewide basis. Pearson v. Murray, 169 Md. 478, 182 A. 590, 103 A.L.R. 706. We take it to be clear, for example, that the State of Louisiana could not be rendered free to maintain a law school exclusively for whites by maintaining at equal cost a school of technology for colored students.

The State of Louisiana has been most generous in its expenditures for public education. Expenditures of this State for the education of colored children have been extensive. This fact does not justify the exclusion of colored citizens alone from enjoyment of the facility here denied them. In this case, that facility is the privilege given to the white people in the area of Lafayette and denied the Negro citizens in the area of Lafayette, namely, "going to college at home"—together with its economic advantages. White persons, thousands of them, have received college education solely because of this privilege. Thousands of colored people cannot solely for the reason that there is no college available to them in the area and they are not admitted to Southwestern. The State is under no compulsion to establish these colleges, yet if they establish them, the rights of white and Negro alike must be measured by the test of equality in privileges and opportunities. The right of the individual student to the privilege of public instruction equivalent to that given by the State to the individual student of another race is a personal one. Equivalency cannot be determined by weighing the respective advantages furnished to the two groups of which the individuals are members. Carter v. School Board of Arlington County, Virginia, 4 Cir.,

182 F.2d 531. In Corbin v. County School Board of Pulaski County, 4 Cir., 177 F.2d 924, 926, the court said:

"The question cannot be decided by averaging the facilities provided for the two classes of pupils throughout the county and comparing one with the other, since the rights created by the Fourteenth Amendment are individual and personal and the prohibitions of the Amendment are observed only when the same or equivalent treatment is accorded to persons of different races similarly situated."

The court will give relief to the petitioners here in accordance with their prayer. The question of whether or not the State statute is constitutional is irrelevant. The entire theory of the Fourteenth Amendment is that where an officer or other representative of a State, in the exercise of authority with which he is clothed, so uses the power possessed to deny a right given by the Fourteenth Amendment, inquiry concerning whether the State has authorized the wrong is irrelevant. The federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power. See Westminster School District of Orange County v. Mendez, 9 Cir., 1947, 161 F.2d 774. See also Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737, and Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497.

The relief prayed for should be granted to the plaintiffs because the Louisiana law, as it has been interpreted and administered by the State officials, is in violation of the Constitution of the United States.

It is so ordered. A decree will accordingly be entered for the plaintiffs and its terms may be settled after notice.