**FIRST NATIONAL CITY BANK,**
Plaintiff,

v.

**GONZALEZ & CO. SUCR. CORPORA-TION et al., Defendants.**

Civ. No. 329–62.

United States District Court
D. Puerto Rico.

Jan. 30, 1970.

Antonio M. Bird, Jr., from McConnell, Valdés, Kelley & Sifre, San Juan, P. R., for plaintiff.

Benjamín Rodríguez Ramón, from Rodríguez Ema & Rodríguez Ramón, San Juan, P. R., for defendants.

## OPINION AND ORDER

CANCIO, Chief Judge.

This case is before the Court on the motion of defendants to vacate the judgment entered in favor of plaintiff, First National City Bank (hereinafter City Bank), and other related motions. City Bank initiated this mortgage foreclosure action to recover amounts due under a bearer mortgage note payable on demand for the principal sum of $175,000.-00 delivered in pledge by Antonio Gonzalez to City Bank. The note was issued by Antonio Gonzalez, acting personally and on behalf of his wife, defendant Ruperta Alcover. It was secured by a mortgage encumbering properties belonging to the conjugal partnership constituted by Antonio Gonzalez and defendant Ruperta Alcover. The mortgage appears in Deed No. 35 executed by Antonio Gonzalez, acting personally and on behalf of his wife Ruperta Alcover, before notary Wallace Gonzalez Oliver, on May 13, 1960. To act on behalf of his wife, Antonio Gonzalez relied on the authority granted by a General Power of Attorney executed by Ruperta Alcover in Deed No. 72 before notary Eric Milan Muñiz on October 31, 1959.

Defendant Antonio Gonzalez died intestate in Lares, Puerto Rico, on June 28, 1962. Defendants Pedro Antonio Gonzalez Alcover, Felipe Gonzalez Alcover, Nilda Rosa Gonzalez de Paraliticci, Juan Francisco Gonzalez Alcover, María Isabel González de Vazquez Tebar, Dr.

Rafael Gonzalez Alcover and José Carmelo Gonzalez Alcover were included as his heirs. The corporate defendant Gonzalez & Co. Sucr. Corporation was the original debtor who received the loan of $174,825.22 from City Bank. City Bank was induced to make the loan by two continuing letters of guaranty through which Antonio Gonzalez, Ruperta Alcover, Pedro Antonio Gonzalez Alcover, Juan Francisco Gonzalez Alcover and Felipe Gonzalez Alcover personally guaranteed the payment of all obligations owing by said corporation to City Bank. The mortgage note subject of this foreclosure action was delivered in pledge as security for the personal indebtedness of Antonio Gonzalez and Ruperta Alcover under those continuing letters of guaranty.

On February 27, 1963 judgment was entered in favor of City Bank, pursuant to a stipulation executed and signed by the attorneys for the parties and by some of the individual defendants. One of the defendants, Juan Francisco Gonzalez Alcover, signed on behalf of defendant Ruperta Alcover and on behalf of those other defendants which were not signatories. The stipulation was executed on January 30, 1963 after extensive negotiations, during a period of five months, between the parties through their attorneys. In the Stipulation and the form of judgment made a part thereof it was stated that the mortgage subject of this action was valid, and that defendants consented to the entry of a judgment against them for the full amount of the claim of City Bank. The consent of defendants was given in consideration for the consent of City Bank to a plan of payment which allowed the defendants to pay their debt by monthly installments throughout seven years. The judgment provided for the foreclosure sale of the properties in the event of a default in the plan of payment.

In August of 1965 defendants defaulted in their plan of payment. The parties through their attorneys entered again into negotiations which resulted in a second stipulation, dated March 4, 1966. This second stipulation informed the Court for the first time that defendant Ruperta Alcover had been declared an incompetent on October 19, 1962, by the Superior Court of Puerto Rico, Caguas Section, and that defendant Juan Francisco Gonzalez Alcover had been appointed her tutor by said Court, and was later substituted by defendant Rafael Gonzalez Alcover. The stipulation requested that Rafael Gonzalez Alcover, the second tutor of Ruperta Alcover, be also appointed her Guardian Ad Litem pursuant to Federal Rule 17(c). Through a document attached to the stipulation, Rafael Gonzalez Alcover consented to his appointment as Guardian Ad Litem of Ruperta Alcover. He also consented and agreed that said appointment be made retroactive to one day before the date of the first stipulation for the entry of judgment and also ratified and confirmed the action of defendant Juan Francisco Gonzalez Alcover in signing said stipulation on behalf of Ruperta Alcover as constituting an action by him as Guardian Ad Litem at the time said stipulation was signed.

The above second stipulation and document were signed by counsel for the defendants and the tutor of Ruperta Alcover in consideration for the agreement of City Bank to grant a stay of execution of judgment for a period of six months during which the defendants would attempt to sell the encumbered properties and pay their debt to City Bank with the proceeds. Said agreement was contained in a letter signed on March 11, 1966 by counsel for the parties and Rafael Gonzalez Alcover, who signed personally and as the tutor of Ruperta Alcover, and it also provided for the foreclosure sale of the properties in the event that they were not sold and City Bank was not paid in full.

A hearing was held on the second stipulation and, by order of August 1, 1966, this Court approved the said stipulation and the consent of Rafael Gonzalez Alcover. Accordingly, judgment was amended and re-entered on September 20, 1966.

Since no sale was made by the defendants during the stay of six months granted to them, City Bank arranged to proceed with execution of judgment. The foreclosure sale was scheduled for June 9, 1967. On the day before that date defendants filed a Motion to Vacate the Judgment, claiming that Ruperta Alcover was an incompetent, completely insane or demented on May 13, 1960, when the mortgage subject of this action was executed by Antonio Gonzalez, acting personally and on behalf of his wife, Ruperta Alcover, and on October 31, 1959, when she executed the Power of Attorney authorizing Antonio Gonzalez to act on her behalf. Defendants also claimed that this Court lacked jurisdiction to approve the two stipulations described above, and lacked jurisdiction over the person of Ruperta Alcover.

Upon the posting of a bond by the defendants, the Court ordered a stay of the foreclosure sale until further order by the Court. On September 4, 1969 plaintiffs filed a motion for the summary dismissal of defendants' Motion to Vacate. Defendants filed a Cross-Motion for the Summary Grant of their Motion to Vacate. For the reasons given below, the Court denies both motions.

■ This Court had jurisdiction to appoint the second tutor as the Guardian Ad Litem of Ruperta Alcover and approve his ratification of the action of the first tutor in executing the stipulation of January 30, 1963. These matters were incidental and ancillary to the jurisdiction of the Court over this mortgage foreclosure action under the Banking Act of 1933, 12 U.S.C.A. § 632.

■ We find that service of process upon Ruperta Alcover was validly made under Federal Rule 4(d) (1). Service of process upon Ruperta Alcover was made through her daughter María Isabel de Vazquez Tebar, at the home of the daughter, on August 22, 1962. At that time Ruperta Alcover was living with her daughter, at her daughter's home. Incompetency proceedings in the Caguas Superior Court were to begin one month later. Defendants contend that personal service upon the incompetent and her tutor was required under Rule 4.4(c) of Civil Procedure for Puerto Rico. Defendants rest their contention on Federal Rule 4(d) (2) which, for service of process upon an incompetent, incorporates the law of the State in which service is made. However, Puerto Rico Rule 4.4(c), by its own terms, is applicable only as to those defendants who have been judicially declared incompetent or who are confined in an institution for the treatment of mental diseases. At the time service of process was made upon Ruperta Alcover she could not be included into either of those two categories. Process could not be delivered to her tutor as required by Puerto Rico Rule 4.4(c) because she had not been judicially declared an incompetent and a tutor had not been appointed. Even if Ruperta Alcover was an incompetent at the time service of process was made upon her, since there is no law in Puerto Rico governing service of process upon a judicially undeclared incompetent, we must revert back to Federal Rule 4(d) (1). In any event, Ruperta Alcover submitted to the jurisdiction of this Court through the appearance of her attorney and first tutor in the stipulation of January 30, 1963; through the appearance of her attorney and second tutor in the stipulation of March 4, 1966 and through the appointment of her second tutor as Guardian Ad Litem. Minors and incompetents may submit to the jurisdiction of a Court in Puerto Rico through the appearance of their tutors or through their personal appearance and the appointment by the Court of a Guardian Ad Litem. Such a submission cures any defects in the service of process. Mendez vs. Sucesion of Sella González, 62 P.R.R. 327; Trueba vs. Martínez, 33 P.R.R. 446. See also O'Conner vs. Western Freight Assn., D.C.N.Y. 1962, 202 F.Supp. 561. Furthermore, any defense of insufficiency of service of process was waived under Federal Rule 12(h).

The main contentions of defendants are that Ruperta Alcover was totally demented on October 31, 1959, when she executed the Power of Attorney, and on May 13, 1960, when the mortgage was executed by Antonio Gonzalez, and consequently, that both instruments were null and void; and that the Stipulations of January 30, 1963 and March 4, 1966, and the entry of judgment pursuant thereto were null and void because no express authorization for these acts was secured from the Superior Court of Puerto Rico, as required by Articles 212, 214 and 215 of the Civil Code, 31 L.P.R.A. 786, 788 and 789. The cited provisions of the Civil Code require an authorization to settle private or judicial matters affecting the rights of an incompetent from the Part of the Superior Court where the litigious question has been raised. The procedure to obtain the authorization is outlined in the Civil Code Articles and in Articles 614, 615 and 616 of the Code of Civil Procedure, 32 L.P.R.A. 2721, 2722 and 2723, and requires the filing of a petition, the intervention of the local District Attorney in representation of the incompetent, and a determination by the Superior Court that the transaction is necessary and useful to the incompetent. Obviously, the cited provisions can not deprive this Court of its inherent jurisdiction to approve the transactions of parties before it, including incompetents. They can not be read to require the authorization of a Part of the Superior Court for a transaction concerning an incompetent, which is under consideration before this Court. Federal courts are not bound by a statute requiring suit to be brought in a particular state court. Markham vs. City of Newport News, C.A. 4th, 1961, 292 F.2d 711. The procedural aspects of the cited provisions are inapplicable in this Court to the extent that they are in conflict with Federal Rule 17(c). Hanna vs. Plumer, 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L. Ed.2d 8; Bengston vs. Travelers Indem. Co. (1955) 132 F.Supp. 512, affirmed, 231 F.2d 263. However, under Federal Rule 17(c) this Court had the duty to protect the incompetent Ruperta Alcover. Although a hearing was held to consider the Stipulation of March 4, 1966, neither the tutor nor the attorney for Ruperta Alcover were present, and the hearing was of brief duration. Thus, the Court faces a dilemma. On the one hand, if the allegation of incompetency of Ruperta Alcover, at the time the Power of Attorney and the mortgage were executed, is true, then the tutor and attorney for Ruperta Alcover, in executing the Stipulations, waived a defense which perhaps should have been raised to defend Ruperta Alcover from the claim of City Bank. If the incompetency allegation of defendants is true, such waiver was made without the Court being made aware of it when the Stipulation of March 4, 1966 was approved. On the other hand, Ruperta Alcover and the other defendants have received the benefits of the plan of payment contained in the Stipulation of January 30, 1963 and of the stay of the execution of judgment obtained as a result of the Stipulation of March 4, 1966. Furthermore, the same tutor who consented to his appointment as Guardian Ad Litem and ratified the first Stipulation of January 30, 1963, is representing Ruperta Alcover in the Motion of Defendants to Vacate Judgment. Both the first and second tutors, appearing on behalf of Ruperta Alcover in the first and second Stipulations, were sons of Ruperta Alcover and no reason has been suggested why they would have waived a substantial right of their mother. Defendants have not explained why they delayed for so long the allegation of incompetency of Ruperta Alcover.

Defendants have belatedly alleged that the Power of Attorney relied upon by Antonio González to act on behalf of his wife Ruperta Alcover is insufficient. They point out the fact that the Power of Attorney granted authority to "constitute * * * mortgages of all kinds encumbering any personal properties or real properties of the principal" and did not expressly grant authority to consti-

tute mortgages encumbering real properties belonging to the conjugal partnership of Antonio González and Ruperta Alcover. Defendants presented the allegation of insufficiency of the Power of Attorney for the first time as part of their Memorandum of Law in support of their Cross-Motion for Summary Grant filed on October 17, 1969. Plaintiff responded by filing a Motion to Strike from the Record the part of the Memorandum of Law containing said allegation on the ground that it constituted a substantial amendment to the Motion to Vacate Judgment two and one-half years after it was filed.

To support their allegation of insufficiency of the Power of Attorney, defendants rely on Ramírez vs. Registrar, 34 P.R.R. 98; Juncos Central Co. vs. Registrar, 29 P.R.R. 82; Alvarez vs. Registrar, 29 P.R.R. 78; Beauchamp vs. Registrar, 27 P.R.R. 356; G. Llinás & Co. vs. Registrar, 23 P.R.R. 705; López Landrón vs. Registrar, 15 P.R.R. 703; Rodríguez vs. Registrar, 14 P.R.R. 754; Vidal vs. Registrar, 12 P.R.R. 152.

■ These cases are administrative appeals to the Supreme Court of Puerto Rico. Some of them are appeals from decisions of Registrars refusing to register notarial instruments containing real property transactions, because one of the parties to the transactions had relied on a power of attorney referring to property belonging to the principal and not real property belonging to the conjugal partnership of the principal and another person. The cases affirm the decisions of the Registrars refusing to register notarial instruments executed by a party depending on such a power of attorney for his capacity to act, on the grounds that through such a power of attorney, the wife, as principal, does not grant the express consent required by Sections 91 and 1313 of the Civil Code for the alienation of real property belonging to the conjugal partnership. Administrative appeals form part of the original jurisdiction of the Supreme Court of Puerto Rico, 4 L.P.R.A. 35, 30 L.P.R.A. 1771 to 1779. They do not originate in adversary proceedings with presentation of evidence and are limited to a review of the Registrar's note together with the documents presented to the Registrar. This kind of administrative appeals although highly persuasive, and normally to be followed, do not establish jurisprudence and are not binding upon the courts. Succession of Criado vs. Martínez, 25 P.R.R. 308, dismissed 250 F. 345; Martorell vs. J. Ochoa & Bro., 23 P.R.R. 28. See also "Derecho Hipotecario", by Ramón M. Roca Sastre, 5th ed., 2nd Vol., at pp. 52–54. The administrative appeals cited by defendants consider particular transactions in their incipient stages only to determine whether the documents embodying the transactions meet the requirements for recordation in the Registry. In Madera vs. Metropolitan Construction Co., P.R.R., decided on December 29, 1967, the court distinguished the requirements for recording a document in the registry from the requirements for its validity as follows:

It being established that the alienation of real property by the husband without the consent of the wife is ratifiable by the latter, we examine briefly the nature of "express" consent to which §§ 91 and 1313 of the Civil Code refer, *supra*. *It is first necessary to clarify that the requisite does not refer to the notarial or registration point of view, for it is known that to produce its effects in this ambit it is indispensable to establish the intervention of the wife in the corresponding public deed or by means of any other document which gives legitimate access to the Registry of Property. We now consider simply the contractual point of view, governed by the spiritualist system which underlies our Civil Code.* Express does not mean that it necessarily has to be in writing, for if that were the case it would have been easy to indicate that a written consent was necessary. Cf. § 172 of the Civil Code of California, 6 West's Annotated California Codes, p. 165. The scope of the provision can

be no other than that of an undoubted, unmistakable statement that the wife having knowledge of the contract executed, affirms it.

Defendants are thus proposing that the principles outlined in the cited administrative appeals be extended from their limited purpose of determining the requirements for access to the registry, and that they be used to evaluate the sufficiency of the Power of Attorney executed by Ruperta Alcover for purposes of determining whether she, in fact, gave her consent for the execution of the mortgage subject of this action.

To allow the allegation of insufficiency of the Power of Attorney, and to extend the reasoning of the above cited administrative appeals as urged by defendants to the situation of this case, would shift some of the burden of proof on the Motion to Vacate Judgment from the defendants to the plaintiff. Under the cases of *Madera, supra,* Encarnación vs. Salim, 39 P.R.R. 1715; Cortijo vs. Registrar, 21 P.R.R. 465; and Caballero et al. vs. Pomales et al., 17 P.R.R. 691, any deficiency in the Power of Attorney would have been cured by the conduct of Ruperta Alcover showing that she intended to authorize her husband to execute the mortgage through the Power of Attorney. Such conduct would have amounted to acts of ratification. Thus, the acceptance by this Court of the new contention of defendants would have the effect of imposing on plaintiff the burden of proving that Ruperta Alcover ratified the mortgage executed by her husband. This would be inequitable. Defendants have not explained why they did not introduce this new contention in their Motion to Vacate Judgment filed two and one-half years ago, or for that matter, as an affirmative defense in answer to the complaint, seven years ago. Evidence of ratification of a transaction that was executed nine years ago is probably inexistent, or at best, next to impossible to find on this date; Ruperta Alcover has been an incompetent for a long time.

The Court must strike a balance between its obligation, under Federal Rule 17(c), to protect the incompetent Ruperta Alcover and the right of the plaintiff to rely on the finality of the judgment entered in its favor. In re Casco Chemical Co., C.A.5th, 335 F.2d 645, 651. To strike such a balance the Court needs to be better informed of the facts relevant to the pending motions. Therefore, a decision on the validity of the Stipulations of January 30, 1963 and of March 4, 1966, on the Motion of Defendants to Vacate Judgment, and on the Motion of Plaintiff to Strike from the Record the parts of the Memorandum of Law filed by defendants on October 17, 1969, which amend the Motion to Vacate Judgment, is deferred until after the hearings set for February 2, 3, 4, 5 and 9, 1970.

The Court finds that, as a matter of law, in Puerto Rico, an agency created by a power of attorney is not terminated merely by the judicially undeclared incapacity of the principal. Article 1623 of the Civil Code, 31 L.P. R.A. 4481, provides that one of the causes for termination of the agency is the interdiction of the principal. We are in agreement with the construction given to that Article by the Spanish commentator Scaevola in the 26th Book, Vol. II, of his treatise "Código Civil", 1951 ed. pp. 762, 765. Scaevola explains that civil interdiction is a change in the legal status of the principal which necessarily presupposes a judicial declaration of incapacity and that, therefore, the mere incapacity of the principal without a judicial decree will not terminate the agency except in the event of fraud, even when the incapacity of the principal is notoriously known, on the grounds that the institution of agency would be seriously weakened if third parties are forced to continually verify the mental condition of the principal.

In the case at bar it is uncontroverted that defendant Ruperta Alcover had not been judicially declared an incompetent on or before May 13, 1960, the date

when Antonio González executed the mortgage subject of this action. Therefore, on the hearings set for February 2, 3, 4, 5 and 9, 1970, the evidence in support of the incompetency allegation shall be limited to evidence that is relevant to the issue of whether Ruperta Alcover was or was not an incompetent on October 31, 1959, when she executed the Power of Attorney. If the Power of Attorney was validly executed on October 31, 1959, then it was still valid on May 13, 1960, at the time when the mortgage was executed, irrespective of the mental condition of Ruperta Alcover on that date. The Court will also receive evidence relevant to the issue of whether the Power of Attorney and the mortgage were or were not ratified.

It is so ordered.